USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/10/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

SCOTT STERN,

                      Plaintiff,

    -v-

REGENCY TOWERS, LLC; SPERBER, DENENBERG
& KAHAN, P.C.; and THOMAS J. BIA,
*a City Marshal of the City of New York*,

                      Defendants.

------------------------------------------------------------------X

11 Civ. 8824 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

    Plaintiff Scott Stern, an attorney, brings this action, *pro se*, against Defendants Regency Towers, LLC ("Regency"); Sperber, Denenberg & Kahan, P.C. ("Sperber"); and New York City Marshal Thomas J. Bia. In his complaint, filed on December 5, 2011, Plaintiff brings a claim pursuant to Title 42, United States Code, Section 1983, alleging that Defendants violated his right to due process by evicting him from his apartment in December 2008 using an illegally backdated warrant of eviction.[1] Plaintiff also asserts claims for fraud (against Regency and Sperber), conversion (against Regency), and violation of New York Judiciary Law Section 487 (against Sperber), in connection with this eviction.

    All three Defendants have moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of the complaint in its entirety. Plaintiff has filed a motion for sanctions against Kenneth Litwack, Esq., Defendant Bia's attorney, and a motion for attorney's fees and costs against Regency. For the reasons stated below, the Court converts Defendants' motions to

---

[1] The complaint states that many of the events occurred in December 2009. Plaintiff has confirmed that the actual date was December 2008. (*See, e.g.*, Pl.'s Mem. of Law in Opp'n to Sperber's Mot. to Dismiss ("Pl.'s Opp'n to Sperber Mem.") 1).

dismiss into motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and grants those motions. In addition, the Court denies Plaintiff's motion for sanctions and grants in part and denies in part Plaintiff's motion for attorney's fees and costs.

## BACKGROUND

The following facts are construed in the light most favorable to Plaintiff Stern. Stern, an attorney now living in Florida, brings this action against Defendants Regency, a limited liability corporation with its principal place of business in New York; Sperber, a New York law firm that has represented Regency in various state court matters; and Bia, a New York City Marshal. On May 31, 2005, Stern entered into a residential lease with Regency for an apartment located on East 63rd Street in New York City (the "2005 lease"). (Sperber Decl. Ex. B, at 8-14). The 2005 lease required Stern to pay $2,550.00 per month in rent and to provide Regency with a security deposit in the amount of $7,650.00. (*Id.* at 8, ¶¶ 1, 4). The lease also provided that in the event Stern breached any of its terms, Regency would be authorized to "apply or keep all or any part of" Stern's security deposit, "to the extent necessary for the payment of rent, additional rent, or damage of landlord resulting from the breach . . . ." (*Id.* ¶ 4).

On July 1, 2006, Stern and Regency renewed the lease, with an expiration date of June 30, 2008 (the "2006 lease"). (*Id.* at 1-7). Except as expressly provided in the 2006 lease, all terms and conditions of the 2005 lease remained in full effect. The "Holdover Rider" to the 2006 lease, which Regency and Stern both signed, provided that "the parties recognize and agree that the Landlord has no obligation to offer the Tenant a Renewal Lease." (*Id.* at 7). The rider also contained a penalty provision that doubled Stern's monthly rent in the event that Stern refused to vacate the apartment at the expiration of the 2006 lease. The rider further provided that "if the Landlord is required to commence legal proceedings based on the Tenant's failure to vacate . . .

the Tenant shall be liable for legal fees. . . . Such sum shall be due as additional rent and if not paid, may be deducted from the security deposit by the Landlord." (*Id.*).

In March 2008, Regency, through its counsel, Sperber, commenced a summary non-payment proceeding in New York Housing Court based on Stern's failure to pay his monthly rent pursuant to the terms of the 2006 lease (the "nonpayment proceeding"). On August 27, 2008, after oral argument on Regency's motion for summary judgment and Stern's cross-motion to dismiss, New York Housing Court Judge Marcia Sikowitz granted Regency's motion and denied Stern's cross-motion. (Sperber Decl. Ex. D). The court awarded Regency a final judgment in the amount of $8,789.00, which represented the rent that Stern owed Regency through April 2008, and ordered the issuance of an eviction warrant forthwith. (*Id.*). Stern sought a stay of this judgment in New York Civil Court, which was granted by Judge Timmie Elsner on October 21, 2008. (Sperber Decl. Ex. E). Thereafter, Judge Elsner determined that Stern owed Regency $25,589.00, and ordered him to immediately tender $14,389.00 to Regency. Judge Elsner stayed execution of the warrant of eviction through October 28, 2008, to give Stern the opportunity to pay the remaining balance of $11,200.00. (*Id.*). On October 24, 2008, Stern filed a notice of appeal of the August 27, 2008 and October 21, 2008 decisions. (Sperber Decl. Ex. F).

On July 14, 2008, fourteen days after the 2006 lease expired, Regency filed a second proceeding against Stern in housing court, based upon the expiration of the lease (the "holdover proceeding"). (Sperber Decl. Ex. G). Regency moved for summary judgment in the holdover proceeding, which Stern did not oppose. By order dated September 29, 2008, New York Housing Court Judge Gary Marton granted Regency's motion, awarding Regency possession of Stern's apartment, a money judgment in the amount of $22,400.00, and issuing a warrant of

eviction forthwith. (Sperber Decl. Ex. H). Judge Marton specifically stated that the warrant of eviction was not stayed. (*Id.* at 2 ("[T]he motion is granted as follows: . . . warrant forthwith, no stay . . . .")). Stern did not file a notice of appeal of this order.

Subsequently, Stern filed a motion in the Appellate Division, First Department, seeking stays of the judgments and warrants in the nonpayment and holdover proceedings. Stern also sought a temporary restraining order from the court, which was conditioned upon Stern's deposit of $5,000.00 with the court. Stern deposited this money with the court on November 6, 2008. (Sperber Decl. Ex. N, at 5, ¶¶ 15-16). On November 21, 2008, the Appellate Division stayed execution of the warrant in the non-payment proceeding, requiring that Stern tender $7,500.00 and the November and December 2008 use and occupancy fees to Regency on or before December 5, 2008, to avoid eviction. (Sperber Decl. Ex. J). Significantly, however, the Appellate Division expressly declined to review the lower court's decision in the holdover proceeding or issue a stay of the warrant in that proceeding, holding that it did not have jurisdiction unless and until Stern filed and served a notice of appeal. (*Id.*).

Stern alleges that on November 24, 2008, he delivered a certified check to Regency in compliance with the Appellate Division's November 21, 2008 order (Compl. ¶¶ 13-14); Regency claims that it never received this check. (Regency's Mem. of Law in Supp. of Mot. to Dismiss ("Regency's Mem.") 4). As reflected in the documents Regency has filed with the Court, on November 24, 2008, Stern's bank issued a cashier's check payable to Regency in the amount of $2,800.00 (significantly less than the amount Stern had been ordered to tender to Regency), but on December 2, 2008, Stern reported this check as stolen. (Sperber Decl. Ex. O). On December 3, 2008 (the date on which he was evicted, as discussed below), Stern informed Regency via e-mail that he had cancelled the check because Regency had not cashed it. (Sperber Decl. Ex. L).

On November 25, 2008, Stern left his apartment and did not return until December 2, 2008. (Compl. ¶¶ 15-16). Upon his return, Stern found a notice of eviction inside his apartment. The notice, dated November 24, 2008, stated that the court had issued a warrant for his eviction and that he "may be evicted, without further notice," on December 3, 2008 (the sixth business day after November 24, 2008), or thereafter. (Sperber Decl. Ex. T, at 2 (capitalization altered)).[2] The notice included the following caution:

> The ONLY way you can stop this eviction is if a Court issues an order to show cause that stays your eviction. You may apply for such an order at the Civil Court, Landlord – Tenant part, in your borough.

(*Id.*). Stern alleges that he was not served with this notice on November 24, 2008. (Compl. ¶ 19). The process server's affidavit, however, reflects that he attempted to serve Stern at his apartment on November 22, 2008, at 8:45 p.m., and again on November 24, 2008, at 3:45 p.m. (Sperber Decl. Ex. T, at 3). According to the process server, after this second visit to Stern's apartment, the process server affixed a copy of the notice of eviction to Stern's door and mailed a copy by certified mail and by regular first class mail. (*Id.*). The notice of eviction therefore indicates that Stern was served on November 24, 2008. (*Id.* at 2).

On December 3, 2008, Bia appeared at Stern's apartment, accompanied by a Regency employee. Stern called the police and two uniformed officers came to his apartment. Stern alleges that he gave Bia "conclusive documentary proof that established beyond any rational doubt, that the [notice of eviction] could not have been served on November 24, 2008." (Compl.

---

[2]     Throughout his papers, Stern refers to the notice of eviction as the warrant of eviction, but there is an important distinction between the two. A warrant of eviction, issued by a court, is what authorizes the eviction; a notice of eviction, issued (in New York City) by a marshal, merely provides notice of the eviction, as required by state law. *See* G N.Y. PRAC., LANDLORD AND TENANT PRACTICE IN N.Y. § 14:471; *see also* MCKINNEY'S RPAPL § 749(2) (discussing the process by which tenant is served with a notice of eviction). In this opinion, the Court refers to the document at issue as the *notice* of eviction.

5

¶ 19). Nevertheless, after speaking with Sperber over the phone, Bia demanded that the police officers allow him to enforce the warrant. (*Id.* ¶¶ 21-22). The officers informed Stern that he could either leave the premises or be arrested, at which point Stern left the apartment. (*Id.* ¶ 23). Within twenty-four hours, Bia had removed all of Stern's property from the apartment. (*Id.* ¶ 24).

On December 11, 2008, Regency made a motion in the Appellate Division to dismiss Stern's appeal of the non-payment proceeding for failure to comply with the November 21, 2008 order or otherwise pursue the appeal. (Sperber Decl. Ex. N). Regency also sought an order directing the release of the $5,000.00 held by the court in connection with Stern's requested temporary restraining order, so that the amount could be applied to the $22,400.00 that Stern owed Regency. (Sperber Decl. Ex. N, at 7). Not knowing Stern's whereabouts, Regency served the motion papers on Stern at his last known address — namely, the apartment from which he had been evicted on December 3, 2008. (*Id.* at 10). Stern did not respond to the motion and, on January 14, 2009, the Appellate Division granted the motion, directing that the funds on deposit with the court were to be released to Regency. (Sperber Decl. Ex. M).

On December 5, 2011, Stern commenced the instant action. Regency, Sperber, and Bia each moved to dismiss the complaint in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Each Defendant annexed materials outside the complaint to its motion papers, and in his sur-reply brief to Sperber's motion, dated May 12, 2012, Stern requested permission to enlarge the record to include additional documents for the Court to consider. (Docket No. 54). On June 12, 2012, the Court issued an order informing the parties that it might treat the motions to dismiss as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Docket No. 57). The Court directed each Defendant to file and serve

on the Plaintiff a Notice to *Pro Se* Litigant, as required by Local Civil Rule 12.1, as well as a Local Rule 56.1 Statement. (*Id.*). The Court also granted all parties the opportunity to file any additional materials they wished the Court to consider, along with explanatory briefs. (*Id.*). Although Defendants filed the required notices and Rule 56.1 Statements, they did not file additional materials for the Court to consider. Stern filed responses to Bia's and Sperber's Rule 56.1 statements. (Docket Nos. 73, 74). He also filed a motion for attorney's fees and costs, to reimburse him for the costs that he incurred in serving the complaint upon Regency after it failed to return the waiver of service, and a motion for sanctions against Bia's attorney, Kenneth Litwack. (Docket No. 70).

## DISCUSSION

### A.  Conversion of the Motions to Dismiss into Motions for Summary Judgment

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court ordinarily "must confine itself to the four corners of the complaint . . . ." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (internal quotation marks omitted). When a party submits additional materials for the court to consider, the court must either disregard the materials outside the pleadings or, after giving the parties "a reasonable opportunity to present all the material that is pertinent to the motion," convert the motion to dismiss into one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 12(d); *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 66 n.1 (2d Cir. 2008). Here, as noted, all parties submitted documents outside the pleadings to the Court in connection with the motions to dismiss. The Court therefore notified the parties that it may convert the motions to ones for summary judgment and invited the parties to submit any additional materials and briefs. (Docket No. 57).

As the Court has considered the materials outside of the pleadings, Defendants' motions to dismiss are converted to motions for summary judgment.  *See* FED. R. CIV. P. 12(d).

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A factual dispute "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if "it might affect the outcome of the suit under the governing law." *Bessemer Trust Co., N.A. v. Branin*, 618 F.3d 76, 85 (2d Cir. 2010) (internal quotation marks and alteration omitted).  In making the determination as to whether summary judgment is appropriate, the evidence must be construed in the light most favorable to the nonmoving party (here, Stern), and all reasonable inferences must be drawn in his favor.  *See, e.g.*, *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund*, Ltd., 661 F.3d 164, 171 (2d Cir. 2011).

In light of these standards, to defeat a motion for summary judgment, the nonmoving party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  In addition, it "may not rely on conclusory allegations or unsubstantiated speculation," *id.* (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)), and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)); *see also*

*Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'") (citations omitted).

Ordinarily, a court is "obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). But proceeding *pro se* "does not otherwise relieve [a party] from the usual requirements of summary judgment," including the obligation "to set forth concrete particulars showing that a trial is needed." *Wesolowski v. Kamas*, 590 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (internal quotation marks omitted). Moreover, "the appropriate degree of special solicitude is not identical with regard to all *pro se* litigants," and where, as here, the plaintiff is an attorney representing himself, he ordinarily "receives no such solicitude at all." *Tracy*, 623 F.3d at 102; *see also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) (noting that *pro se* attorneys typically "cannot claim the special consideration which the courts customarily grant to *pro se* parties") (internal quotation marks omitted); *Fenner v. City of N.Y.*, No. 08-CV-2355 (BMC) (LB), 2009 WL 5066810, at *3 (E.D.N.Y. Dec. 21, 2009) ("Although *pro se* litigants are generally entitled to a broad reading of their submissions because of their lack of familiarity with the law, that is not the case with attorneys who have chosen to proceed *pro se*. It is well settled in the Second Circuit that since the reason for affording *pro se* litigants special deference is not present when the litigant is an attorney, no special consideration is required.") (citation omitted).

**B. The Section 1983 Claims**

Stern's first claim, brought pursuant to Section 1983, is that Defendants — including Bia, acting under color of law — acted "in concert" to deprive him of his constitutional right to due process of law. (Compl. ¶¶ 35-47). In particular, Plaintiff contends that Defendants "knowingly and intentionally" deprived him of his right to due process by, first, serving him with a

9

"backdated" notice of eviction and, second, "failing to remedy the situation after they were informed that the [notice] of eviction incorrectly stated that it was served on November 24, 2009." (*Id.* ¶¶ 40-41). Stern alleges that if the notice of eviction had contained the true date of service (which he contends was some unspecified date after November 24, 2008), or if Defendants had agreed to re-serve the notice, he "would have been permitted to engage the judicial process and would not have been evicted from his residence." (*Id.* ¶¶ 42-45).[3]

This claim fails as a matter of law for several reasons. First, Stern's claim that Defendants backdated the notice of eviction is arguably barred by the statute of limitations, which is three years from the date of accrual. *See, e.g.*, *Owens v. Okure*, 488 U.S. 235, 240-41 (1989); *Connolly v. McCall*, 254 F.3d 36, 40-41 (2d Cir. 2001).[4] The question of when a Section 1983 claim accrues is a question of federal law, *see Wallace v. Kato*, 549 U.S. 384, 387 (2007), which provides that a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotation marks omitted); *see also Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) ("The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action."). Here, assuming the injury was the backdating itself, Stern knew or had reason to know of it no later than December 2, 2008, when he returned home and found the notice of eviction. (Compl. ¶16;

---

[3] Under New York law, Bia was required to give Stern six business days' notice before executing the warrant of eviction because Stern was not served with the notice of eviction personally. *See Dolan v. Linnen*, 753 N.Y.S.2d 682, 693-94 (N.Y. Civ. Ct. 2003) (citing N.Y.C. DEPT. OF INVESTIG., NYC MARSHAL'S HANDBOOK OF REGULATIONS § 5.2, at 51–52 [1997]).

[4] Actions against a city marshal, such as Bia, generally are subject to a one-year statute of limitations, *see Vargas v. Wughalter*, No. 08 Civ. 11378 (DC), 2009 WL 2356832, at *5 (S.D.N.Y. July 30, 2009), but not when they arise under Section 1983. *See, e.g.*, *Jemison v Crichlow*, 531 N.Y.S.2d 919, 926 (App. Div. 2d Dep't 1988).

10

*see also* Sperber Decl. Ex. T). Thus, to the extent he raises claims based on the backdating of the notice, he arguably had to file those claims on or before Friday, December 2, 2011. *See, e.g.*, *Day v. Morgenthau*, 909 F.2d 75, 79 (2d Cir. 1990) (noting that, for actions in federal court, when a statute of limitations is measured in years, "the last day for instituting the action is the anniversary date of the relevant act") (citing FED. R. CIV. P. 6(a)(1)). Stern did not file his complaint until December 5, 2011, so to that extent his claims appear to be time barred.

Second, and more fundamentally, even if the notice of eviction was backdated (and there is no evidence it was), Stern's claim fails because he was given all the process he was due under the Constitution. Under New York law, tenants such as Stern "are protected by multiple notice provisions and by the continuing jurisdiction of the Civil Court over the landlord/tenant disputes." *Matter of Brusco v. Braun*, 84 N.Y.2d 674, 681-82 (1994) (discussing provisions of Article 7 of the New York Real Property Actions and Proceedings Law). In the present case, Stern does not question the process that resulted in the two warrants of eviction or the warrants themselves, and for good reason: The warrants were issued only after lengthy state court proceedings in which Stern was given ample opportunity to contest, and did contest, the legality of his eviction. Under state law, however, even after a warrant of eviction issues, as in this case, the Civil Court retains jurisdiction "to vacate the warrant for good cause shown" prior to its execution. *Id.* (citing MCKINNEY'S RPAPL § 749(3)). Moreover, "the Civil Court may, in appropriate circumstances, vacate the warrant of eviction and restore the tenant to possession *even after the warrant has been executed*." *Id.* (emphasis added) (citing *Solack Estates v. Goodman*, 432 N.Y.S.2d 3 (App. Div. 1st Dep't 1980)). In *Solack Estates*, for example, the Civil Court did just that, vacating a warrant of eviction that had been issued on default while the

11

tenant was on vacation in Florida and restoring her to possession of her apartment — even though the eviction itself had been legal.  *See* 432 N.Y.S.2d at 5.

Thus, state law provided Stern with a means to challenge the adequacy of the notice of eviction and, by extension, the timing and propriety of the eviction itself.  Furthermore, evidence submitted by Stern himself demonstrates beyond doubt that he had an adequate opportunity to avail himself of those means, even before the eviction on December 3, 2008.  By Stern's own admission, he returned to New York on December 2, 2008, and found the notice of eviction.  (Compl. ¶ 16).  At that point, he explains, he "was forced to make a choice" between going to Staten Island to appear in an unrelated legal case on behalf of a client or "going to the Housing Court to defend" himself.  (Stern Decl., Docket No. 54, ¶ 6).  He chose to do the former — even though the notice of eviction clearly stated that he faced eviction the next day unless he sought and obtained from the Civil Court an order to show cause that stayed his eviction.  (Sperber Decl. Ex. T; Stern Decl., Docket No. 54, ¶ 6; *see also id.* Ex. B (Docket No. 54-2) (stating, in an e-mail sent on the evening of December 2, 2008, that he had come home that morning to learn from the mail that he "had to be in Housing Court at 9:30" that morning, that he "shrugged," that he went upstairs and found the notice of eviction indicating that he was to be evicted the next day, that he "took a deep breath" and then went to Staten Island)).  Having made the voluntary choice to forego the pre-deprivation remedies available to him under state law, and failed to avail himself of the post-deprivation remedies available to him under state law as well, Stern cannot now be heard to complain that he was deprived of due process, let alone recover damages.  *See, e.g.*, *Harris v. Mills*, 572 F.3d 66, 76 (2d Cir. 2009) (holding that providing notice and an opportunity to be heard prior to deprivation of a property right, "coupled with" a "post-deprivation remedy" under state law, "is enough to satisfy due process"); *Bergesen v. Lindholm*,

760 F. Supp. 976, 985 (D. Conn. 1991) (finding no due process violation when defendants had adequate pre-deprivation notice and a meaningful opportunity to be heard, but did not avail themselves fully of that opportunity).

Finally, and in any event, even assuming *arguendo* that the notice of eviction was backdated, there is no evidence in the record that Bia, as opposed to the process server, was responsible for the backdating. To be sure, Bia did execute the warrant of eviction and actually evict Stern, and aspects of Stern's claim relate to those events. But Bia cannot be held liable for evicting Stern pursuant to a facially valid warrant of eviction (and Stern does not question the validity of the warrant — as opposed to the notice — of eviction). *See, e.g.*, *Tornheim v. Eason*, 363 F. Supp. 2d 674, 677 (S.D.N.Y. 2005) (holding that when a sheriff is presented with a facially valid mandate of the court, he "is not bound to inquire into the proceeding leading up to the approval and the granting of the order" and is justified in "obeying it according to its terms"); *Morris v. Katz*, No. 11-CV-3556 (JG), 2011 WL 3918965, at *4 (E.D.N.Y. Sept. 4, 2011) (same); *see also, e.g.*, *Maldonado v. N.Y. Cnty. Sheriff*, No. 05 Civ. 8377 (JGK), 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006) (holding that defendants executing a facially valid order of eviction are protected by quasi-judicial immunity); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238-39 (7th Cir. 1986) (same); *cf. Green v. Boyd*, No. A-08-CA-036-LY, 2008 WL 2117671, at *6 (W.D. Tex. May 16, 2008) (holding that allegations that a judge backdated arrest and search warrants were barred by judge's judicial immunity). Because Stern's Section 1983 claims against Bia fail, it follows that his Section 1983 claims against Regency and Sperber — both non-state actors — also fail. *See, e.g.*, *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (holding that where Section 1983 claims against state actors have been dismissed,

13

claims alleging participation of non-state actors in a civil rights conspiracy must also be dismissed).

**C. Fraud**

Stern's second claim — against Regency and Sperber — is for fraud. Specifically, he contends that Regency and Sperber fraudulently refused to inform him or his bank whether Regency had received his certified check, dated November 24, 2008, and that, had Regency admitted that it received the check, "the admission would have foreclosed its ability to evict plaintiff." (Compl. ¶ 50). Putting aside that there is no evidence to support Stern's conclusory assertions of such fraud, Stern's claim fails as a matter of law because he cannot show that the alleged fraud caused him any harm, as required under New York law. *See, e.g.*, *Crigger v. Fahnestock & Co. Inc.*, 443 F.3d 230, 234 (2d Cir. 2006) (noting that "resulting damage to the plaintiff" is one of the elements of a fraud claim under New York law). As explained above, on November 21, 2008, the Appellate Division stayed the warrant of eviction in the non-payment proceeding, requiring Stern to tender $7,500.00 and the November and December 2008 use and occupancy fees to Regency on or before December 5, 2008. (Sperber Decl. Ex. J). In the same order, however, the court expressly declined to stay the warrant of eviction in the holdover proceeding. (*Id.*). Thus, contrary to Stern's allegations (*see* Compl. ¶¶ 49-50), even if Regency had cashed the disputed check in the non-payment proceeding, Stern would have been evicted pursuant to the warrant of eviction in the holdover proceeding. In other words, even assuming there was fraud, Stern cannot establish that it was the "direct and proximate cause" of his eviction, so his claim fails. *Laub v. Faessel*, 745 N.Y.S.2d 534, 536 (App. Div. 1st Dep't 2002).

14

**D. Conversion**

Plaintiff's third claim, a conversion claim against Regency for "failing" to return his security deposit (Compl. ¶¶ 55-57), is also easily rejected. Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Net. Inc.*, 8 N.Y.3d 43, 49-50 (2006). In the present case, however, the evidence makes clear that Regency did have authority to withhold Stern's security deposit. As shown by the documents filed in state court, as of December 2008, Stern owed Regency $22,400.00, and Regency had engaged in extensive litigation to recover those funds. (*See* Sperber Decl. Ex. N, at 4-7). Under the plain terms of the 2005 and 2006 leases and the holdover rider, Regency was entitled to apply Stern's security deposit toward that debt. (*See* Sperber Decl. Ex. B, at ¶ 4 ("[I]f Tenant fails to obey any term of this Lease, the Landlord may apply or keep all or any part of such security . . . to the extent necessary for the payment of rent, addition rent, or damage of Landlord resulting from the breach of this Lease by the Tenant."); *id.* at 7 ("[I]f the Landlord is required to commence legal proceedings based on the Tenant's failure to vacate . . . the Tenant shall be liable for legal fees. . . . Such sum shall be due as additional rent and if not paid, may be deducted from the security deposit by the Landlord.")). Thus, Regency's retention of the security deposit was authorized and does not constitute conversion. *See, e.g.*, *Taylor Bldg. Mgmt., Inc. v. Global Payments Direct, Inc.*, 866 N.Y.S.2d 96 (N.Y. Sup. 2008) (holding that retention of a reserve fund was authorized by the parties' service agreement and therefore did not constitute conversion).

### E.  Judiciary Law Section 487

Plaintiff's final claim is brought against Sperber under Section 487 of the New York Judiciary Law, which permits an aggrieved party to recover treble damages in a civil action against an attorney that "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." N.Y. JUD. LAW § 487 (McKinney 2005). In particular, Stern alleges that Sperber violated Section 487 in several ways: (1) by directing Regency not to cash Stern's certified check in November 2008, and then misrepresenting to the state court that Regency did not receive this check (Compl. ¶¶ 60, 63); (2) by instructing Bia to backdate the notice of eviction in the first instance and then to execute the warrant when it knew that the notice was incorrectly dated (*id.* ¶¶ 61-62); and (3) by failing to inform the Appellate Division that Plaintiff had not received Regency's December 11, 2008 motion seeking release of the money Stern had deposited with the court.  (*Id.* ¶¶ 65-66).

This claim also fails as a matter of law.  First, to the extent the claim is based on events occurring prior to December 3, 2008, including Sperber's alleged instructions to backdate the warrant of eviction and to forgo cashing Plaintiff's check (Compl. ¶¶ 60-61), it too is barred by the statute of limitations.  *See Rafter v. Liddle*, No. 05 Civ. 4296 (TPG), 2006 WL 2255093, at *11 (S.D.N.Y. Aug. 4, 2006) (noting that the statute of limitations for a claim under Section 487 is three years).  Second, there is absolutely no evidence in the record to support Stern's conclusory accusations of deceit or collusion, let alone an intent to deceive.  *See Jaroslawicz v. Cohen*, 783 N.Y.S.2d 467, 467 (App. Div. 1st Dept. 2004) (affirming dismissal of complaint for failure to sufficiently plead intent to deceive).  With respect to Stern's allegations about the December 11, 2008 motion, for example, the evidence shows that Sperber served Stern at his last known address and filed proof of that service with the Appellate Division.  (Sperber Ex. N, at

16

10).  To be sure, that address was the apartment from which Stern had been evicted, but the motion papers clearly stated that Stern had been evicted from his apartment on December 3, 2008, so Sperber cannot be accused of misleading the court.  Moreover, Sperber cannot be faulted for Stern's own failure to update the court of his new address or otherwise take steps to ensure that he would receive any new documents filed in the ongoing litigation.  In short, there is no evidence to support Stern's claim that Sperber engaged in misconduct, let alone misconduct "sufficiently egregious" to be actionable under Section 487.  *Trepel v. Dippold*, No. 04 Civ. 8310 (DLC), 2005 WL 1107010, *4 (S.D.N.Y. May 9, 2005).

**F.  Stern's Motions for Sanctions, Attorney's Fees, and Costs**

That resolves Defendants' motions to dismiss.  As noted above, Stern has also filed two motions of his own: one against Litwack, Bia's counsel, for sanctions under Rules 11 and 56 of the Federal Rules of Civil Procedure; and one against Regency for "the expenses, related costs, and attorneys' fees" he incurred in serving the complaint and summons upon Regency after it failed to return the waiver of service.  The former, Stern's motion for sanctions, is both procedurally defective and entirely lacking in merit.  First, as Stern himself concedes (*see* Pl.'s Rep. Aff. In Support of Mot. for Sanctions, at ¶ 2), the motion is procedurally defective because he failed to comply with the "safe harbor" provision of Rule 11, which requires a party to make a Rule 11 sanctions motion "separately from any other motion" and to serve a copy of the motion on the allegedly offending party twenty-one days before it is filed with the court.  FED. R. CIV. P. 11(c)(2); *see Castro v. Mitchell*, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) ("A motion that fails to comply with the safe harbor provision of Rule 11 must be denied."); *see also, e.g.*, *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002) (reversing imposition of Rule 11 sanctions because "appellees did not serve their [Rule 11] motion on Perpetual prior to filing it with the

17

court"). Stern contends that he was not required to comply with Rule 11's procedural requirements because he brought his motion pursuant to Rule 56(h) of the Federal Rules of Civil Procedure, but he cites no authority for the proposition that a party can sidestep the safe harbor requirements of Rule 11 by bootstrapping a Rule 11 claim into a Rule 56 motion.

In any event, Stern's motion for sanctions, whether brought pursuant to Rule 11 or Rule 56(h), fails on the merits. Sanctions under Rule 11 are appropriate only in "extraordinary circumstances." *Park v. Seoul Broad. Sys. Co.*, No. 05 Civ. 8956 (BSJ) (DFE), 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008) ("Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances."); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, No. 04 Civ. 5316 (RMB) (MHD), 2006 WL 2807213, at *6 (S.D.N.Y. Sept. 28, 2006) ("Sanctions should always be a (very) last resort."). And an order to pay expenses pursuant to Rule 56(h) requires a finding of "bad faith," which courts have found only when the attorney's conduct is "egregious," such as "where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case." *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412, 415-16 (S.D.N.Y. 1998). Here, there is simply no evidence that Litwack engaged in misconduct, let alone the level of misconduct that would give rise to sanctions under either Rule 11 or 56(h). Accordingly, Stern's motion for sanctions is denied.

Stern's motion to recover the costs of service from Regency, however, has more merit. Under Rule 4(d)(2) of the Federal Rules of Civil Procedure, "[i]f a defendant located within the United States fails, without good cause, to sign and return" a proper request for waiver of service, the court "must impose on the defendant" both "the expenses later incurred in making service" and "the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses." FED. R. CIV. P. 4(d)(2). Here, Regency does not really dispute

that Stern is entitled to some reimbursement under the Rule; in particular, Regency does not dispute that it failed to sign and return Stern's request for waiver of service and it makes no attempt to show "good cause" for that failure.  Under the plain terms of Rule 4(d), therefore, the Court "must" order Regency to reimburse Stern for his expenses.  *See, e.g.*, *U.S. Engine Prod., Inc. v. AGCS Marine Ins. Co.*, 769 F. Supp. 2d 626, 629 (S.D.N.Y. 2011).  Nevertheless, as Regency contends, there is absolutely no basis to Plaintiff's request for $5000.00 in expenses, especially insofar as he is not entitled to recover attorney's fees as a *pro se* party.  *See Kay v. Ehrler*, 499 U.S. 432, 435-38 (1991); *accord Coyle v. Coyle*, 334 F. Supp. 2d 284, 288 (E.D.N.Y. 2004), *vacated on other grounds*, *Coyle v. Olsen*, No. 03 Civ. 3286 (ADS) (ARL), 2004 WL 2370685 (E.D.N.Y. Sep 30, 2004); *cf. S.N. ex rel. J.N. v. Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 603-05 (2d Cir. 2006) (holding that attorneys representing their own children in actions brought under the Individuals with Disabilities Education Act are not entitled to attorney's fees).

Accordingly, on or before September 7, 2012, Plaintiff shall submit a detailed schedule, along with supporting documentation, of the expenses he incurred in making service (i.e., the process server fee and associated ancillary costs) as well as "the reasonable expenses" (other than attorney's fees) that he incurred in making his motion.  Regency shall have one week to respond.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (Docket Nos. 14, 25, 33) are converted to motions for summary judgment and GRANTED; Plaintiff's motion for sanctions (Docket No. 70) is DENIED; and Plaintiff's motion for attorney's fees and costs (Docket No. 44) is GRANTED in part and DENIED in part.  Plaintiff is directed, consistent with

this Opinion, to submit a detailed schedule, along with supporting documentation, of the expenses he incurred in serving Regency and in making his motion for costs no later than September 7, 2012. Regency shall have one week to file any opposition to Plaintiff's submission.

The Clerk of Court is directed to terminate all of the aforementioned motions.

SO ORDERED.

Dated: August 10, 2012
      New York, New York

                                                JESSE M. FURMAN
                                           United States District Judge